24-2927 Slingshot Printing v. Canon. Good morning. Good morning. Thank you, and may it please the Court. The Board here failed to resolve a dispositive claim construction dispute. The facts here are very similar to Corning v. Fastfeld, where the experts applied dueling constructions to motivation to combine, and then the construction disposed of which expert's testimony the Board could properly credit. The claims here require a tight spacing of ink chambers 6 to 1,200 dots per inch constructed in a, quote, thick film layer. All the references that taught a thick film layer, we don't dispute that there are such references, didn't teach the 600 dots per inch spacing. The only reference that taught 600 dots per inch was Imanaka. Right, and that's what we're here for, and it's a combination of those references that get you to win the Board gauntlet.  So the issue was whether skilled artisans would take Imanaka, which Imanaka says to construct the ink chambers in a silicon or diamond film, and transplant that into a thick film layer, which our expert opined was a polymer material. So that is a dispute is there that the thick film layer was in the combination of Hamafuku and Witten? Yes, Your Honor. Hamafuku and Witten taught a thick film layer. We don't dispute that. But the Board also found that Hamafuku and Witten did not teach constructing ink chambers that would give you a 600 dots per inch density. And that's why Imanaka came in. Exactly. So how is this a claim construction issue? It's a claim construction issue for the same reason as in Corning v. Fassfeld. Their expert testified, opined, that thick film layer could be any material. So when he took Imanaka, which is teaching a silicon or diamond material, he said you would take the geometry from Imanaka, which is in silicon or diamond, and then you would put it in the thick film, which we argue is a polymer. It's a plastic, right? It's a soft material. And so whether skilled artisans would take geometry, right, ink chambers designed to be carved into diamond or silicon, and transplant that into what we assert is a polymer. But the Board didn't rely on Imanaka as teaching at the film layer. Yes, Your Honor. But the Board specifically found, accredited Cannon's testimony, that skilled artisans would have taken Imanaka's geometry. Right, right. But you're arguing that the Board erred in its claim construction. But even if the Board adopted your proposed claim construction, the one that you're proposing on appeal, I don't see how it changes the Board's analysis, because the Board relied on two prior references that teach a thick film polymer that satisfies your claim construction. Your Honor, the issue here is whether skilled artisans would take geometry that Imanaka teaches. Right, right. It's a fact question. You've got a good teach-as-away argument, these kind of things. But how is it a claim construction? So Corning v. Fast Felt is very clear about this. If the claim construction is relevant to the motivation analysis, right? In Corning v. Fast Felt. But it's not in fairness to the Board. But, I mean, it does say what you proposed as your claim construction early on in your opinion. But when it gets to the analysis, it says you don't contest. We don't contest. These references include a thick film. We agree that two references teach. We agree that two references teach. Do you agree that the Board isn't relying on Imanaka to teach that claim element? No. We agree that the Board relied on Whitman and Hamafuku to teach the thick film layer. And you don't dispute that? We don't dispute that there is a thick film layer. But the Board found also that you would take the geometry of Imanaka, the very tight density, and transplant it into a thick film layer. If a claim recites. That sounds exactly in motivation or in teaching away. It is a claim construction argument that's relevant to motivation. So if you have the geometry of a Swiss watch and some expert says, well, you would take the geometry of a Swiss watch and you would transplant it into plastic. The Board never said Imanaka teaches a thick film, did it? The Board did not. No. We're not saying that the Board says Imanaka teaches a thick film. So why is it that this is a claim construction issue? I mean, I understand what you're saying is that it doesn't make technological sense to do what the Board said in its modification. But the Board didn't rely on a claim construction to do that. They recognized that Imanaka didn't teach a thick film. So let me then turn to the expert's testimony, right? As in Corning v. Fassbell, their expert assumed that when their expert said you would take Imanaka and you would combine it with Hamafuku's thick film. He applied a specific construction. He assumed that the thick film could be any material, right? So he never analyzed the issue of whether you would be able to construct this geometry from Imanaka, which is in a diamond film, and then apply it in a polymer. His argument is that the expert relied on an incorrect claim construction? The expert assumed that it could be any material. So under our claim construction where a thick film had to be a specific polymer soft material, his testimony just wasn't relevant. He didn't consider the relevant issues when you're going from diamond to plastic, right? These are ink chambers that are under high pressure. And can the plastic tolerate the high pressure the way the diamond can? He didn't consider the issues because he assumed that a thick film material could be any material. And if you look at, for example, Appendix 741, when he's talking about the benefits of the combination, he points to Imanaka's teaching, sorry, Appendix 739, he points to Imanaka's teaching that a silicon nitride material is beneficial, right? So he's not basing his testimony on addressing the issue of whether skilled artisans would be able to form this dense geometry in a thick film layer. Can you tell, I mean, Ford goes over, goes through in incredible detail the arguments from each side. Can you point to me where in its opinion, other than at the beginning where it talks about you propose this claim construction, but where in its analysis of motivation to combine or dealing with the prior art references, I don't see them calling out that you're making this argument. So you don't see them calling out the what? That your side made this argument to them. So for example, in Appendix 41, we made the teaching away argument, right? We said that Imanaka teaches away from using a thick film because Imanaka teaches using silicon or diamond. It's the third paragraph there. And the board said Imanaka doesn't teach away from what it said. We are not persuaded, however, that Imanaka's preference for silicon-based materials would teach away or otherwise discourage one of ordinary skill in the art from combining the references. Imanaka does not suggest that failure to use silicon-based materials would result in an inoperable device. And so our argument was that Imanaka tells you to use diamond or silicon and a thick film is a polymer. The claim requires the chambers to be constructed in a thick film. And where Imanaka says to use diamond, skilled artisans wouldn't then take that geometry and construct it in a plastic. Where is the claim construction argument? The claim construction, it's relevant to what is a thick film, right? If a thick film can be diamond, then the teaching away, there's no teaching away. Where do you argue, for example, that the expert's testimony is incorrect because it's based on an incorrect claim construction? Yes, we say that in our appendix 288, where we actually propose our claim construction. So the first full paragraph, we say... Say it? Oh, I see now, okay. Petitioners and their expert, Mr. Curley, ignored the meaning of thick film layer as recited in the claim. And then we say, excuse me, right at the bottom, where, sorry, this is talking about the construction. And... Sorry, and then it's... So we talk about that their expert ignores the meaning of thick film layer. And then again, at appendix 1603. What's happening at 288 again? 288 is where we propose our construction, and we say their expert's testimony is ignoring the meaning of thick film layer. That it's limited to a polymer. And then at appendix 1602, we say at the very bottom, Mr. Curley, which is Kamin's expert, Mr. Curley's declaration does not take the composition of Imanaka's chamber walls into account. And at his deposition, he admitted that he had not considered whether the fact that Imanaka is using silicon is relevant to being able to achieve the high density. Again, we don't dispute that prior art taught a thick film. But every single reference, the board dealt with several of them. Every single reference that taught the thick film, using plastic is what we contended means, didn't teach the high density. You wouldn't be able to construct before our teachings, right, before the teachings in our patent, you wouldn't be able to construct the density of the chambers in a plastic material because the pressure was too high. Our expert explained, our patent has very specific teachings about, for example, using laser ablation versus, or using photolithography. So let me ask you, let's assume that this were a claim construction dispute, and the board and or we rejected your claim construction. Then would that mean that you have no more teaching away or motivation to combine arguments? No, Your Honor. I think there is a teaching away argument. If the court agrees that a thick film layer could literally be anything, then we agree that there is no teaching away argument. If the court thinks that a thick film layer has is something other than silicon, then there's still a teaching away issue. And let me just turn to the merits of the teaching away issue. This is not a case where it's about the battle of the experts. We think their expert's testimony is simply irrelevant under Corning. But more to the point, the board here invoked three incorrect legal standards in analyzing teaching away an expectation of success. It said our expert hadn't said that it was beyond the capabilities of a skilled artisan. That's not the standard. It said reliability is not relevant because it's not claimed. But reliability is absolutely relevant to motivation to combine an expectation of success. Because skilled artisans would consider it in analyzing those issues. And the board looked at our patent. The board acknowledged that there was an issue of would the plastic be strong enough to deal with the pressures that would be encountered when you're making the chambers very dense. But the board said, well, your patent shows that plastic would have been strong enough. That's classic hindsight bias. Even putting aside the claim construction, the board's analysis based on multiple errors of law can't stand. And as our expert testified, our patent has very specific disclosures about how all of the prior art that used thick films couldn't achieve the density. Our patent discloses a very specific process, very specific geometry, tolerances, use of lithography rather than laser ablation to be able to construct a high density printhead in a plastic thick film way. And with that, there's a question. Good morning. And thank you, and may it please the court. Slingshot wants to make this whole appeal about claim construction. But it can't even prevail on that because Slingshot's construction of thick film layer improperly imports preferred embodiments into the claims. But as your honors noted during opposing counsel's argument, this court doesn't even need to decide the claim construction issue because it is undisputed that Whitman teaches a thick film layer under Slingshot's construction. Slingshot also raises a teaching away argument. It failed to raise it below, so it's forfeited. And it depends on the claim construction. Can I just get to the case for me because there's a lot of stuff going on here and some of it in my view at least may not be relevant to the disposition. But your friend does raise, either in his brief or here, kind of two missteps or matters of law that the board in its teaching away and motivation analysis engaged in. One, at least, that was raised in the briefs was their statement that this is inoperable, that the mocker does not suggest that failure would result in an inoperable device. That's not, as a legal matter, something that they would have to do, right? So that's not- And let me just give you the other one so I can respond to both of them. And they also say at 44, they look to the patent itself. And they say, well, this would be hard to do because look at the patent in it. And that, as your friend says, seems to at least arguably be supported in some of our case law as being improper hindsight. So do you agree that these are errors and just think that they're harmless errors? Or do you disagree that they're errors at all? I disagree that they're errors at all. And certainly, to the extent that they are errors, they would be harmless. But let me attack the first one, which is the inoperability issue. The Board made that comment when it was deciding whether or not to credit Mr. Deedle's testimony. It wasn't saying that's the whole standard for motivation to combine that it was using. It was saying it looked at Mr. Deedle's testimony, but his testimony seemed to be focused on inoperability. And the Board actually acknowledged that's not the test here. So I don't see – I don't know what to do with this testimony because he seems to be focusing on inoperability. I'm going to discredit it. Instead, I find Mr. Curley's testimony, which focuses on the claims, which don't require certain operating- Does that record anywhere? I mean, that the Board said they were referring to his testimony and they disagreed with it? Appendix page 42 is where the Board recognized – 42. Thank you. So it's the last paragraph. They don't require the printhead to operate in any particular manner or achieve any particular operational parameters. And then they credit Mr. Curley's testimony about the components. And I believe in other places they do discuss Mr. Deedle's testimony as well. So, obviously, by pointing to Mr. Curley's testimony as credible, they're at least not giving credit to Mr. Deedle's testimony in view of that analysis. And then regarding the second question, which is the use of the patent, that was only – the Board made that comment only in response to an argument that Slingshot raised. Slingshot said this combination would not operate and that a skilled artisan would believe that and wouldn't have a reasonable expectation of success. And the Board just noted, as a practical matter, well, it does operate because this is – there's no dispute that all the elements here create the claim. There's no dispute that all the elements there are in the prior art. So if it does operate in the patent, then we have to consider the fact that, yes, it would operate. Let's just focus on whether or not a skilled artisan would have a reasonable expectation of success in it operating. And the Board then looked at Mr. Curley's testimony, where he said that all the components were known and that it would be straightforward to put these together. And the Board also looked at Imanaka's disclosure, where Imanaka says that it would also – that the disclosure is not limited to silicon nitride film, but can be composed of any film with suitable mechanical strength. So you've got a broad disclosure from Imanaka, and then you've got an expert saying that all the components are known and would be straightforward. That's how the Board arrived at that issue. It didn't rely on the patent in improper use of hindsight. And as Your Honor began your question, to the extent that it did, the rest of its analysis is sound, so it would be harmless error. Do you agree that Slingshot argued before the Board that Cannon's expert relied on an incorrect claim construction of thick film? We didn't see that in the record citations that they provided here. I don't think that that was an argument that they presented, and certainly not clearly enough for the Board to address it in determining whether or not to credit. If that was your position, what would you argue before the Board? Would you argue that the testimony is not credible? Would you argue that it should be – I mean, you know, in district court, you might file a motion and eliminate. What is your procedural option before the Board if you're saying that somebody's testimony, an infringement expert, is relying on an incorrect claim construction, for example? That's not infringement, you know what I mean, a validity expert. So you would just present that to the Board and say, and the Board eventually – they issue their final decision where they determine the claim construction issues. Remember, we had the benefit of the initial decision where the Board instituted, so everybody knew what the issues were, and everybody had an opportunity to bring these issues to the court. They didn't specifically criticize Mr. Crowley for using the wrong claim construction, but even if they had, first of all, they're wrong on the claim construction, so we can just handle that very easily because their claim construction only asked to incorporate preferred embodiments into the claim. The patentee clearly knew how to identify – So is it your view that we have to do that? No. Our review here? No, you don't need to reach the issue. But if you had any concerns, that would be an easy way to resolve this. But you don't need to reach the issue because the Board made findings on both claim constructions. I think a great example of that is on Appendix Page 44. The Board says on Appendix Page 44 in the first paragraph, about halfway through the first paragraph, where it begins with, Indeed, the printhead of the 951 patent has a higher nozzle pitch than Imonaca and the 951 patent specification discloses no concerns regarding the type of material used in the thick film layer. That would be under our construction of thick film layer, any type of material, or any concerns using a polymeric material. That would be under their construction. So here the Board is making dual findings under both constructions, and it does that in various other places because it doesn't – Unfortunately for you, that's about one sentence that has been bothering me, where they're going back to the patent and seeing what the patent did. But it proves that the Board applied both constructions in its analysis. So to the extent that the Board – that Your Honor believes that it shouldn't have looked at that patent, which, again, we disagree with, it also answers the question of did the Board think of this through both lenses, and it did. The Board told us it was doing that, and it told us again on Appendix Page 11, where it says that no terms require construction, and again on Appendix Page 34, where it explains that we have identified where Hamafuku alone, or Hamafuku and Whitman under Slingshot's construction, disclose every element of Limitation 1D. I want to touch briefly on the teaching away argument because there's two issues with it. The first is that it was forfeited. The words teaching away and discouraged are completely absent from all of their briefing below. In fact, on Appendix Page 341, Cannon filed a reply after the patent owner had filed its response, and Cannon says, well, there's no teaching away argument raised here. Slingshot didn't try to correct that in the surreply, and it wasn't brought up at the oral hearing either. So the only thing that Slingshot can point to is that one line in the opinion from Appendix Page 41, which is just generally addressing the motivation to combine, but the fact that the Board used the words teach away doesn't mean that Slingshot raised it, so it was forfeited. And even if it wasn't forfeited and this Court does reach it, Imanaka cannot meet the stringent teaching away standard. A reference teaches away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path or led in a divergent way. Imanaka doesn't limit itself to any type of material. It says its printhead is not limited to silicon nitride film but can be composed of anything else. And in the very next column, this is on Appendix Page 1037 at Lines 3 through 5, there's actually a reference to thick film layer, so to thick film. So once again showing that this term does not have an established meaning in the art that they're trying to argue, and to the extent it does, it's saying that the silicon nitride film could be thick. That's on Appendix Page 1037, Lines 3 through 5. Turning back to the reasonable expectation of success argument, which is really the only argument that this Court needs to address here, the Board relied on Mr. Crowley's testimony combined with Imanaka's disclosure that we just referenced. Those two things are enough to find a reasonable expectation of success. And the Board also noted that there was no contrary credited evidence to rule the other way, so it really only had one way to rule on this issue. Unless the Court has any further questions? Thank you. Kenan says that the claim construction wasn't relevant, but Kenan also says that the Board applied both claim constructions. It points to Appendix 44, where the Board considered both, you know, it could be any material versus it must be a polymer. That's the only place the Board addressed our claim construction that had to be a polymer. And as your Honor recognized, it looked to our patent, right? It recognized that there was a motivation problem here, that you're taking silicon design and you're putting it into a polymer, and it said, well, your patent does it. And that's just not legally the correct standard. Additionally, I think this is dispositive, you know, Corning versus Fassfeldt, which we cite in our brief, right at the first page of our reply brief, presents this exact issue. But I just want to touch on Imanaka's specific teachings here. Imanaka doesn't just have a preference for silicon. Imanaka says at Appendix 1035, Column 6, it says, quote, silicon makes it, quote, possible to stabilize the discharge of the printhead and, quote, realize a printhead of high reliability. And then at Appendix 1037, Column 9, it says, quote, that you can use any film with, quote, suitable mechanical strength. But in the very next sentence, the continuation of that sentence, it says you use something like diamond or zirconia, right? So when it's saying you can use anything with suitable mechanical strength, it's saying that mechanical strength matters, right? And it's giving specific examples. You have to interpret the category in light of the examples, which is diamond or zirconia. Is it your view? Are you going to address the waiver of teaching away? Is it your view that a teaching away argument was made, but not in so many words? Your Honor, I think teaching away is just the flip side of the coin of motivation. We clearly made a motivation argument. The board clearly understood our argument as being teaching away. We said Imanaka says to use a silicon material. So skilled artisans would have been dissuaded from going with a thick film plastic polymer material. It's just two sides of the same coin. We didn't have to use the words teaching away, but the board understood it. There's a specific law, though, that goes with the teaching away doctrine, right? And so are you asking us to apply motivation arguments? I mean, you know, there's different law for teaching away. It's a very strict requirement, right? And so which law are you talking about? We believe that we meet the standard of AstraZeneca. It probably can't be teaching away if you don't think you argued it below and instead you argued it inside. Your Honor, AstraZeneca says a teaching away can be implicit disparagement, right? Where Imanaka says that it is necessary to stabilize the discharge and realize a high reliability printhead, and it's required to meet the mechanical strength requirements, it is teaching so strongly in favor of a silicon material that under AstraZeneca it's teaching away from using a plastic material. So you're maintaining that you are arguing teaching away. We're arguing teaching away. We're also arguing there's no dispute. You don't use that phrase. We're arguing lack of expectation. It's a procedural question. We didn't use the words teaching away. We believe it meets the standard for teaching away. That's how the board understood our argument, and the board also addressed it in terms of discourage, in terms of motivation. I think in this particular context, the motivation and the teaching and the expectation analysis are kind of blended together because the question is would skilled artisans take a design that's meant to be carved into diamond and transplant it into plastic? Would they expect success in doing so? And the board didn't need to kind of separate the specific doctrines here, and we didn't address them in that manner, but we meet the standard. Thank you.